# In the United States Court of Federal Claims

No. 17-540C

(Filed: November 6, 2017)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*

| | |
|---|---|
| \* | |
| RUDY SAMUEL MELSON, | \* Motion to Dismiss, RCFC 12(b)(1); |
| \* | Lack of Jurisdiction; Statute of |
| Plaintiff, | \* Limitations; Motion to Dismiss, |
| \* | RCFC 12(b)(6); Failure to State a |
| v. | \* Claim; Wrongful Discharge; |
| \* | Continuing Claim Doctrine; Review |
| THE UNITED STATES, | \* of Military Records; Judicial Review |
| \* | of Army Board for Correction of |
| Defendant. | \* Military Records Decision |
| \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*

*Mark A. Crawford*, The Crawford Law Firm, PC, Floral Park, New York, for Plaintiff.

*Igor Helman*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., and *Daniel Mazzone*, U.S. Army Legal Services Agency, for Defendant.

<u>OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS</u>

WHEELER, Judge.

Plaintiff, Rudy Samuel Melson, commenced this action on April 17, 2017 seeking correction of his military discharge from the United States Army Reserve. Broadly construing his complaint, Mr. Melson also alleges that a hostile work environment caused him to suffer physical ailments. The Government has moved to dismiss the complaint for lack of jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Court's rules. For the reasons explained below, the Government's motion to dismiss is GRANTED.

Factual Background

Mr. Melson entered the United States Army Reserve as a Private First Class in September 2002. Compl. ¶ 5. While pursuing higher education, Mr. Melson participated in the Senior Commissioned Officer Student Training and Extern Program. Id. ¶ 12. Through that program, Mr. Melson began his active duty service obligations on May 27, 2008 as a Health Services Officer Trainee with the Federal Bureau of Prisons at the Federal Correctional Institution in Otisville, New York. Id. ¶ 13. Shortly thereafter, Mr. Melson learned that his father in California needed his assistance, so Mr. Melson requested a transfer of his service to California. Id. ¶ 14-15. On June 30, 2008, the Army denied his request, but informed Mr. Melson that he could transfer if he individually found an agency in California that would take him. Id. ¶ 16. Then, Mr. Melson was on extended medical leave for surgery and hospitalization during August and early September 2008. Id. ¶ 24.

When he returned from medical leave, Mr. Melson's working conditions at the corrections facility worsened rapidly. On September 16, 2008, a supervisor informed Mr. Melson that his duties were being changed, and he later reviewed an allegedly adverse Commissioned Officer Effectiveness Report on October 3, 2008. Id. ¶ 30-31. He submitted a rebuttal to this review on October 5, 2008, but the next day an officer at the Federal Bureau of Prisons ordered him to change his rebuttal. Id. ¶ 34, 36. Then, on November 5, 2008, Mr. Melson received word that he was being involuntarily separated, but on November 18, 2008, a warden at the Otisville facility told Mr. Melson that he was being suspended with pay. Id. ¶ 40-41. Mr. Melson alleged in the complaint that on November 25, 2008, the day after his suspension was to take effect, he "was forced to resign in lieu of voluntary separation." Id. ¶ 42.

At some unspecified time, Mr. Melson emailed a wrongful termination complaint to the Department of Health and Human Services Office of the Inspector General. See id. ¶ 48. On April 7, 2009, that office notified Mr. Melson that they would forward his complaint to the Equal Employment Opportunity Commission ("EEOC"). Id. On May 13, 2009, the EEOC informed Mr. Melson that it was not the appropriate office to file his complaint. Id. ¶ 49. Finally, on December 3, 2009, the Department of Health and Human Services Equal Employment Opportunity Office ("EEO") told Mr. Melson that he could file his grievance with that office, and he did so the following day. Id. ¶ 50-51. But, on January 26, 2010, the EEO dismissed Mr. Melson's complaint for failure to timely file. Id. ¶ 53. The EEO denied his appeal to that dismissal. Id. ¶ 55.

From August 2009 through the end of 2010, Mr. Melson pursued mediation, but the mediation concluded with no resolution. Id. ¶¶ 57-59. At some unstipulated time, Mr. Melson also brought his claims before the Army Board for Correction of Military Records ("ABCMR") and the Board for the Correction of Public Health Service Commissioned Corps Records ("BCPHSCCR"). Id. ¶ 65.

In count one of the complaint, Mr. Melson alleges the ABCMR failed to find that Mr. Melson suffered from a medical condition, which was "unequivocally due to aggravation proximately caused by Basic Combat Training and additional ROTC training thereafter, which qualified him for medical separation with severance pay," see Compl. ¶ 66, but the complaint does not otherwise mention any combat experience or ROTC training to support such a claim.  The ABCMR apparently determined that there was not enough evidence "to substantiate Mr. Melson's injury was service-related or in line of duty." Id. ¶ 67.  Mr. Melson asks the Court to correct that determination, characterizing it as "misinformed" and "erroneous."  Id. ¶¶ 68, 73.

In count two, Mr. Melson requests the Court to "conduct *de novo* reviews of all ABCMR and BCPHSCCR decisions," Compl. ¶ 106, as well as amend the documented reason for Mr. Melson's discharge, amend the description of his service in his discharge, expunge the wrongful termination action and all adverse documentation in his personnel file, order payment of retroactive retirement pension, and award punitive damages and travel costs.

## Standard of Review

The Tucker Act, 28 U.S.C. § 1491(a)(1), gives this Court authority to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

"Subject matter jurisdiction must be established before the Court may proceed to the merits of any action." BearingPoint, Inc. v. United States, 77 Fed. Cl. 189, 193 (2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998)).  "The party asserting the Court's jurisdiction bears the burden of proof on jurisdictional issues." Id. (citation omitted).  When determining whether Plaintiff has satisfied this burden, the Court looks "beyond the pleadings and 'inquire[s] into jurisdictional facts' in order to determine whether jurisdiction exists." Lechliter v. United States, 70 Fed. Cl. 536, 543 (2006) (quoting Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)).

Under Rule 12(b)(1), the Court will dismiss a complaint if it lacks jurisdiction over the subject matter.  When considering a Rule 12(b)(1) motion, the Court accepts as true the undisputed allegations in the complaint, and draws all reasonable inferences in favor of the plaintiff.  Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989), abrogated on other grounds by, Harlow v. Fitzgerald, 457 U.S. 800 (1982), (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

When considering a motion to dismiss for failure to state a claim upon which relief may be granted under RCFC 12(b)(6), the Court "must accept as true all of the allegations

3

in the complaint, . . . and [the Court] must indulge all reasonable inferences in favor of the non-movant." <u>Laudes Corp. v. United States</u>, 86 Fed. Cl. 152, 160 (2009) (citing <u>Sommers Oil Co. v. United States</u>, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).  To state a claim, the plaintiff must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief.  <u>Cary v. United States</u>, 552 F.3d 1373, 1376 (Fed. Cir. 2009); <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  The factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Bell Atl. Corp.</u>, 550 U.S. at 555.  Plaintiff need not set out in detail the facts upon which the claims are based; however, there must be enough facts to state "a claim to relief that is plausible on its face." <u>Cary</u>, 552 F.3d at 1376.  A complaint will therefore only be dismissed pursuant to Rule 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." <u>Laudes Corp.</u>, 86 Fed. Cl. at 160 (citing <u>Lindsay v. United States</u>, 295 F.3d 1252, 1257 (Fed. Cir. 2002)); <u>see also</u> <u>Morse Diesel Int'l, Inc. v. United States</u>, 66 Fed. Cl. 788, 797 (2005) (noting that dismissal is only proper where a plaintiff can "prove no set of facts in support of his claim which would entitle him to relief").

## Discussion

The Government requests the Court to dismiss the complaint for lack of subject matter jurisdiction, arguing primarily that Mr. Melson's claims are outside of the six-year statute of limitations.  Def.'s Mot. Dismiss 6-8 ("Mot. Dismiss").  The Government also argues that to the extent count two of the complaint alleges that Mr. Melson's involuntary separation was caused by discrimination and a hostile work environment, those types of claims do not fall within this Court's jurisdiction.  <u>Id.</u> at 8-9.

In the alternative, the Government argues, count two should be dismissed for failure to state a claim upon which relief can be granted because it merely states conclusory allegations of a hostile work environment and discrimination.  <u>Id.</u> at 9-10.  Even if this Court had the jurisdiction to hear such claims, the allegations in the complaint would not be enough to support a claim for which the Court could grant relief.  <u>Id.</u>

In opposition to the Government's motion to dismiss, Mr. Melson argues that because "[t]he acts and or omissions giving rise to this action are alleged by Plaintiff to have occurred on or about and between September 16, 2008 through on or about March 22, 2016," with the claim *accruing* on March 22, 2016, his claims are within the six-year statute of limitations.  Pl.'s Affirmation in Opp'n to Def.'s Mot. Dismiss ¶¶ 6-7 ("Pl.'s Opp'n").  By analogizing to Indian breach of trust claims, Mr. Melson asserts conclusory statements that the statute of limitations accrued at the time the Department of Health and Human Services issued its decision on March 22, 2016.  Mr. Melson fails to provide further elaboration in support of those conclusory statements, or explain why Indian breach of trust claims are analogous here.  Moreover, in response to the Government's assertions that Mr.

4

Melson's claims are time-barred, Mr. Melson states "any delays from 2008 to March 22, 2016 are attributable to the acts and or omissions by the Department and therefore the burden does not lie at the Plaintiff's table." <u>Id.</u> ¶ 24.  Mr. Melson then argues that the "continuing claim doctrine" should apply to his case, but, aside from making another conclusory statement, does not explain why. <u>Id.</u> ¶¶ 25-26, 31.

A. <u>Mr. Melson's Claims are Untimely.</u>

Under 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  "A claim first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." <u>Ingrum v. United States</u>, 560 F.3d 1311, 1314 (Fed. Cir. 2009).  This statute of limitations is jurisdictional.  <u>John R. Sand & Gravel Co. v. United States</u>, 552 U.S. 130 (2008).

Mr. Melson argues that because his claim is based on an "erroneous decision" that the Department of Health and Human Services issued on March 22, 2016, he had six years from that date to bring this case.  The case law, however, squarely opposes such an argument that a wrongful discharge claim accrues upon an administrative board's decision. "This court and the Court of Claims have frequently addressed and rejected the argument that the cause of action for unlawful discharge does not accrue until the service member seeks relief from a correction board and the correction board enters a final decision denying relief." <u>Martinez v. United States</u>, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (en banc) (citations omitted).  After citing to a series of cases supporting such a conclusion, the <u>Martinez</u> court explains that "since their creation, the correction boards have been regarded as a permissive administrative remedy and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit . . . ." <u>Id.</u>  It then follows that, here, Mr. Melson's seeking administrative relief did not prevent the statute of limitations tolling.

As a defense to the statute of limitations, Mr. Melson seeks to benefit from the "continuing claim doctrine" by asserting that he "has laid out clearly and concisely a series of events that collectively, resulted in the causes of actions now being pursued." Pl.'s Opp'n ¶ 25, 28-31.  The Court finds this argument unpersuasive.  "In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associate damages . . . ." <u>Wells v. United States</u>, 420 F.3d 1343, 1345 (Fed. Cir. 2005) (quoting <u>Brown Park Estates-Fairfield Dev. Co. v. United States</u>, 127 F.3d 1449, 1456 (Fed. Cir. 1997)).  The Federal Circuit and its predecessor courts have applied the continuing claim doctrine to situations "where the payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim upon which suit

can be brought." <u>Friedman v. United States</u>, 310 F.2d 381, 385 (Ct. Cl. 1962); <u>see also, e.g.</u>, <u>Batten v. United States</u>, 597 F.2d 1385, 1387 n.10 (Ct. Cl. 1979). "On the other hand, if there was only a single alleged wrong, even though the wrong caused later adverse effects, our case law has said the continuing claim doctrine is not applicable." <u>Wells</u>, 420 F.3d at 1345-46. If Mr. Melson wishes to point to the discharges and the board's subsequent dismissal of his wrongful discharge complaint, these stem from a single alleged wrong. Therefore, the continuing claim doctrine cannot apply.

Mr. Melson's discharge claims are untimely because they accrued more than six years prior to the filing date, and they do not fit within the continuing claim doctrine framework. Mr. Melson was discharged from the Army Reserve on October 3, 2005, Compl. ¶ 6, and separated from the U.S. Public Health Service Commissioned Corps on November 25, 2008, <u>id.</u> ¶ 42. The fact that he sought administrative relief does not shield his claims from the statute of limitations. For these reasons, Mr. Melson's claims are time-barred and must be dismissed.

B. <u>Mr. Melson's Count Two Claims Fall Outside of This Court's Limited Jurisdiction.</u>

Even if Mr. Melson's claims had been timely filed, count two of his complaint contains no allegations that would entitle him to relief in this Court of limited jurisdiction. To the extent that he claims he suffered emotional distress from involuntary separation, Compl. ¶ 101, and that he was placed in a discriminatory and hostile work environment, <u>id</u>. ¶ 96-100, these claims are not within the purview of this Court. <u>See</u> <u>Cottrell v. United States,</u> 42 Fed. Cl. 144, 149 (1998) ("It is well settled that the Court of Federal Claims lacks jurisdiction over any and every kind of tort claim."); <u>see also</u> <u>Hill v. United States,</u> 204 Fed. Appx. 877 (Fed. Cir. 2006) (affirming the Court of Federal Claims' dismissal of complaint alleging hostile work environment, among other tort claims). Similarly, Mr. Melson's request for punitive damages is beyond this Court's authority. <u>See</u> <u>Mastrolia v. United States</u>, 91 Fed. Cl. 369, 381-82 (2010) ("It is well-established that the Court of Federal Claims lacks authority to grant punitive damages.") (citations omitted). This Court does not have the jurisdiction to hear these claims, or to grant the requested relief, so this case must be dismissed.

C. <u>Mr. Melson Fails to State a Claim Upon Which Relief Can Be Granted.</u>

Even supposing this Court could hear Mr. Melson's discrimination and hostile work environment claims, the allegations in the complaint would not be enough to "raise a right to relief above the speculative level," because they are conclusory and lacking "specificity." <u>Bell Atl. Corp.</u>, 550 U.S. at 555, 558. Mr. Melson only describes one situation which could plausibly support a hostile work environment claim, but does not allege any connection between that incident and his discharge. <u>See</u> Compl. ¶ 28 ("LCDR

Michelle Baker immediately pulled him into her office and screamed at him repeatedly, and, addressed Mr. Melson in an unprofessional and condescending manner.").  Further, to the extent that Mr. Melson seeks travel costs, see Compl. ¶106(f), he does not allege any divestment of travel entitlements to support granting such relief.  Mr. Melson fails to state a claim upon which this Court may grant relief, so his complaint must be dismissed.

<u>Conclusion</u>

For the foregoing reasons, the Government's motion to dismiss is GRANTED, and the complaint shall be dismissed without prejudice.

IT IS SO ORDERED.

<u>/s/ Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge