# In the United States Court of Federal Claims

No. 17-540 C
Filed: March 25, 2021

|  |  |
|---|---|
| RUDY SAMUEL MELSON, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) ) |

*Mark Anthony Crawford*, The Crawford Law Firm, PC, Floral Park, New York, for Plaintiff.

*Igor Helman*, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., with whom was *Major Kyle Meisner,* United States Army Legal Services Agency, of counsel.

## OPINION AND ORDER

**MEYERS, Judge.**

     Before the Court is the Government's Motion to Dismiss Rudy Melson's disability retirement claim, which argues that the Court lacks subject matter jurisdiction over this purportedly untimely claim. To determine whether this claim is timely, the Court must determine whether Mr. Melson, a veteran of the California Army National Guard and Reserve Officer Training Corps, knew at the time of his discharge in 2005 that injuries he asserts he sustained while on active duty were, in the words of the statute, "of a permanent nature and stable." 10 U.S.C. § 1201(b)(1). If Mr. Melson had such knowledge in 2005, his Complaint is untimely, and the Court lacks jurisdiction. If he did not, however, the Complaint is timely, and the case will proceed. Based on the factual circumstances surrounding Mr. Melson's discharge, the Court finds that he lacked sufficient knowledge that his injuries were "of a permanent nature and stable" at the time of his discharge. The Government's Motion to Dismiss is DENIED.

### I. Background

     Because many of the facts of this case are recounted in prior decisions of this Court, 135 Fed. Cl. 207 (2017) ("Melson I"), and of the Federal Circuit, 780 F. App'x 885 (2019) ("Melson II"), only the facts relevant to the pending motion are included below. These facts are drawn from the Complaint and documents filed by the Government in a Supplemental Appendix to its Motion to Dismiss, ECF No. 24-1 ("S. Appx"), which consists of documents from administrative

proceedings regarding Mr. Melson's discharge from the military and thus constitutes a portion of the administrative record in this case. Given that many of the facts essential to resolving the Government's Motion to Dismiss are not explicitly pleaded in the Complaint,[1] resort to the Supplemental Appendix is necessary to determine this Court's jurisdiction. *See, e.g.*, *Lewis v. United States*, 32 Fed. Cl. 301, 304 (1994) ("[I]n deciding an issue of subject matter jurisdiction the court may look to matters outside the pleadings.").

Mr. Melson began his service with the United States Army Reserve ("USAR") as a Private First Class on September 30, 2002. Compl. ¶ 5; S. Appx at 11. Beginning in May 2003, Mr. Melson began seeking treatment for pain in his hands and wrists. S. Appx at 20 (medical notes from May 2003 visit regarding hand pain); *id*. at 19 (medical notes from June 2003 recording "joint pain in hands"). On September 22, 2003, Mr. Melson had a rheumatology consultation regarding the recurrent wrist pain he was experiencing. *Id.* at 22.

As part of his application to the ROTC/SMP, Mr. Melson underwent a medical screening to determine his fitness for appointment as a commissioned officer in the Army. On January 23, 2004, the Department of Defense Medical Examination Review Board ("DODMERB") informed Mr. Melson that he was "medically disqualified" from appointment as a commissioned officer because of rheumatoid arthritis. *Id.* at 1. While the timing is not clear from the Complaint or the briefing, the Army Board for Correction of Military Records ("ABCMR") determined that on August 19, 2004, Mr. Melson requested a release from the Army Reserve to enlist in the California Army National Guard ("CAARNG") to participate in the Army's Reserve Officer Training Corps/Simultaneous Membership Program ("ROTC/SMP"). S. Appx at 72. Under the ROTC/SMP, Mr. Melson would serve concurrently in the CAARNG and ROTC. *See* S. Appx at 67.

As a result of being medically disqualified from appointment, the Army disenrolled Mr. Melson from the ROTC/SMP "due to chronic pain in hands and wrists, a medical condition which precludes appointment as a commissioned officer." S. Appx at 2. Because of Mr. Melson's disenrollment from the ROTC/SMP, Army regulations required that he be discharged from the Army Reserve as well effective May 13, 2005. *Id.* at 3 (the discharge order was issued on May 23, 2005). Mr. Melson's disenrollment also mandated that he be discharged from the CAARNG. But for reasons that remain unexplained, Mr. Melson was not discharged and continued to drill with his Guard unit until October 3, 2005. *Id.* at 79 ("The reason for delay in processing his discharge after disenrollment is not known . . . ."). Because of this continuing service to the CAARNG, the effective date of Mr. Melson's discharge date from the CAARNG and as a "Reserve of the Army" was corrected to October 3, 2005. *Id.* at 6 (correcting "8b." to read "2005 – 10 – 03").

---

[1] As explained below, Mr. Melson did not explicitly plead a claim for disability retirement in the Complaint. The Federal Circuit determined that, although "not a model of clarity," the Complaint sufficiently alleged a claim for disability retirement relating to Mr. Melson's discharge and remanded to this Court to determine in the first instance when the claim accrued and whether it was timely filed. *See infra* at 3.

2

In 2009, Mr. Melson began seeking a review of his discharge from various army boards and the CAARNG.  In 2013, Mr. Melson brought a disability claim before the ABCMR, in which he sought to have his discharge changed to one for physical disability with severance pay.  S. Appx at 43.  On November 25, 2014, the ABCMR denied his claims.  *Id*. at 49-62.  Following a request for reconsideration, the ABCMR again denied Mr. Melson's disability retirement claim.  *Id.* at 66-81.

## II.     Procedural History

On April 7, 2017, Mr. Melson filed his complaint in this Court.  ECF. No. 1 ("Compl.").  The Complaint includes two counts: (1) Plaintiff's 2005 separation from the USAR was wrongful and entitled him to back pay; and (2) Plaintiff's 2008 separation from the U.S. Public Health Service Commissioned Corps was due to discrimination and a hostile work environment.  *Id.*  On November 6, 2017, Judge Wheeler[2] dismissed both counts for lack of subject matter jurisdiction because of the expiration of the statute of limitations.  *Melson I*, 135 Fed. Cl. at 211-12.  Judge Wheeler also found that the hostile work environment and discrimination claim in Count II lay outside the Court's jurisdiction and that even if the hostile work environment claim were timely and within the Court's jurisdiction, it would still be dismissed for failure to state a claim.  *Id*. at 212-13.

On appeal, the Federal Circuit affirmed the dismissal of these two claims but found that "[t]hough not a model of clarity . . . the complaint [also] alleged a disability retirement claim with respect to Melson's discharge from the Army Reserve."  *Melson II,* 780 F. App'x at 887.  The Circuit, therefore, vacated-in-part and remanded the case back to this Court to "determine when the limitations period began to run for any disability claim based on Melson's discharge from the Army Reserve and whether such a claim is time-barred."  *Id.* at 888.

On January 10, 2020, the Government filed a Motion to Dismiss under Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1) for lack of subject matter jurisdiction ("Def.'s MTD").  ECF No. 24.  Mr. Melson filed his Response to the Motion to Dismiss on June 8, 2020 ("Pltf.'s Resp.").  ECF No. 29.  The Government filed its Reply on July 7, 2020 ("Def.'s Reply").  ECF No. 32.  Oral argument was heard on December 11, 2020.  Following oral argument, on December 14, 2020, the Court ordered supplemental briefing to address which of the boards that reviewed Mr. Melson's discharge challenges was the proper board under the statute whose decision triggered the statute of limitations.  ECF No. 38.  On January 11, 2021, the Government filed its Supplemental Brief ("Def.'s Suppl. Br."), ECF No. 39, and Mr. Melson filed his Supplemental Brief ("Pltf.'s Suppl. Br."), ECF No. 40.  The Government filed its Supplemental Reply Brief on January 21, 2021 ("Def.'s Suppl. Reply").  ECF No. 41.  Mr. Melson did not file a supplemental reply.  This matter is now ripe for review.

## III.    Jurisdiction & Standard of Review

The Government challenges the Court's jurisdiction under 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

---

[2] This matter was transferred to the undersigned on October 26, 2020.  ECF No. 33.

Unlike most statutes of limitations that provide an affirmative defense, Section 2501 is "jurisdictional" in nature.  *E.g.*, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008).  "Accordingly, a motion to dismiss a matter from our court due to the expiration of the statute of limitations period concerns a lack of subject matter jurisdiction and is thus properly brought under RCFC 12(b)(1)."  *Chisolm v. United States*, 82 Fed. Cl. 185, 192 (2008).

When considering a Rule 12(b)(1) motion, the Court accepts as true the undisputed allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  When making its determination, the Court is allowed to consider not only "the allegations in the complaint, [but] may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'"  *A&D Auto Sales, Inc., v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)); *see Terry v. United States*, 103 Fed. Cl. 645, 652 (2012) (collecting cases).

If the Court determines that it lacks subject matter jurisdiction, "the court must dismiss the action."  RCFC 12(h)(3).

**IV.   Discussion**

The question before the Court is when did Mr. Melson's claim for disability retirement accrue.  Under the generally applicable rule, which Mr. Melson argues should apply, Pltf.'s Resp. at 3, "[c]laims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it."  *Chambers v. United States* 417 F.3d 1218, 1224 (Fed. Cir. 2005).  This is because "the Court of Federal claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance."  *Id.* at 1225.  Here, the ABCMR was "the appropriate military board" for purposes of the statute of limitations, so its decision would, according to Mr. Melson, start the statute of limitations.  *See* Def.'s Suppl. Br. at 2-3 (asserting that the DODMERB does not constitute a retiring board, so it does not begin the statute of limitations for Mr. Melson).  As explained below, if Mr. Melson is correct, his claim is timely.

Here the ABCMR issued two decisions regarding Mr. Melson's claim.  The ABCMR denied Mr. Melson's application for correction of his records on November 20, 2014, S. Appx at 50, and sent notice to Mr. Melson on November 25, 2014, *id.* at 62.  Mr. Melson then sought reconsideration from the ABCMR.  In response, the ABCMR stated that Mr. Melson's request for reconsideration "provides a new argument which was not previously considered."  *Id.* at 69.  The ABCMR then considered Mr. Melson's "new argument" and issued a decision (under a new docket number) again denying Mr. Melson's claim on January 14, 2016.  *Id.* at 67.  It is, however, unclear if this was "reconsideration" in the traditional sense given that the second decision addressed an argument not made before but apparently could have been.  Mr. Melson argues that the 2016 decision is what should start the statute of limitations, although acknowledges that it may be the 2014 decision.  *See* ECF No. 29 at 3-4.  In any event, because Mr. Melson filed his Complaint on April 17, 2017, if the general rule articulated in *Chambers*

applies and the statute of limitations started upon either of the ABCMR's decisions, Mr. Melson's disability claim is timely filed and the Court has jurisdiction to hear it.

But there is an exception to the general rule that the Government argues makes Mr. Melson's claim untimely. According to the Government, because of Mr. Melson's knowledge of his injuries at the time of his discharge—indeed, they were the underlying reason for his discharge—the statute of limitations began to run upon his discharge in May 2005, rendering his claim untimely under the six-year statute of limitations. Def.'s MTD at 9. When a service member has sufficient knowledge of his or her injuries before discharge, "the service member's failure to request a hearing board prior to discharge has been held to have the same effect as a refusal by the service to provide board review." *Chambers*, 417 F.3d at 1226 (quoting *Real v. United States,* 906 F.2d 1557, 1560 (Fed. Cir. 1990)).

"Whether the veteran's knowledge of the existence and extent of his condition at the time of his discharge was sufficient [for a disability claim to accrue at the time of discharge] must be determined by reference to the statutory requirements for entitlement to such benefits." *Real*, 906 F.2d at 1562. There are several statutory requirements for disability retirement applicable to veterans, like Mr. Melson, with less than eight years of service. As the Federal Circuit has succinctly summarized, Mr. Melson is entitled to disability retirement "only if he was unfit due to a *permanent* disability which was not the result of his own misconduct and which was 'service-connected.'" *Id.* at 1563 (emphasis in original). Here, the only statutory requirement at issue is whether Mr. Melson had sufficient knowledge at the time of his discharge in 2005 that "based upon accepted medical principles, the disability [was] of a permanent nature . . . ." 10 U.S.C. § 1201(b)(1).[3]

Based on the record as it exists, the Court cannot agree with the Government's conclusion that Mr. Melson had sufficient knowledge of his injuries to start the statute of limitations at the time of his discharge in May 2005. It is beyond dispute that Mr. Melson knew of his injuries at the time of his discharge; indeed, they were the underlying reason he was disenrolled from the ROTC/SMP, which led to his eventual discharge. S. Appx at 1-3. But that alone is not enough to start the statute of limitations if the full nature and scope of the injury remains unknown. On this point, *Harper v. United States*, 310 F.2d 405, 406-07 (Ct. Cl. 1962), is illustrative. In *Harper*, a servicemember initially injured his back removing two men from a crashed airplane while stationed in England in 1942. And he re-injured his back two more times in 1943 and required hospitalization. *Id.* at 406. After rotating back to the United States in 1944, Harper was disqualified from overseas duty and found fit only for limited duty. Harper sought and received a hardship discharge late in 1944 without ever appearing before a retiring board to determine his fitness for duty. Despite all his knowledge of his injuries, eventually undergoing surgery, the Claims Court found his complaint filed in 1959 to be timely based on the Army's denial of his disability claim rather than his discharge. Because Harper lacked understanding of

---

[3] Because the only statutory requirement at issue here is whether Mr. Melson knew his injuries were permanent, the Court assumes that the other elements are satisfied for the purposes of resolving this motion. The Court, however, does not express any view regarding Mr. Melson's ability to satisfy the other statutory requirements for disability retirement, which will be at issue when the Court addresses Mr. Melson's claims on the merits.

the true nature and severity of his injuries at the time of his discharge, his knowledge of his injuries was insufficient to overcome the general rule that it is the board determination that triggers the statute of limitations. *Id*. at 407.

Similarly, while Mr. Melson clearly knew of his injuries when he was discharged, the facts when viewed in the light most favorable to him indicate that he was reasonably unaware of the permanence of these injuries at the time of his discharge in May 2005. In *Real*, the court stated that "veterans who never applied for a Retiring Board because they did not know they were ill or did not appreciate the progressive or serious character of their disease or disability will not be cut off by limitations from pursuing their late-discovered claim before the Correction Board and this court." *Real*, 906 F.2d at 1562 (citing *Friedman v. United States*, 310 F.2d 381, 402 (Ct. Cl. 1962)). At most, at Mr. Melson's May 2005 discharge, he knew that he had suffered from chronic hand and wrist pain, but there were no indicators that his problem was permanent or even causing him pain or preventing him from performing his duties at the time of his discharge. In fact, there is no indication in the record as it exists at this point that Mr. Melson required medical treatment after his rheumatology consultation in September 2003, approximately 20 months before his discharge. *See* S. Appx at 19-22 (notes of medical appointments in May-Sept. 2003). And Mr. Melson was not being discharged because of a disability, he was being discharged from the USAR because he was found to be unfit for appointment as a commissioned officer rather than suffering from a disability that prevented his retention. *See* S. Appx at 79-80 (ABCMR conclusion that Mr. Melson's "medical condition … precluded <u>appointment</u> (not retention) as a commissioned officer.") (emphasis in original). Finally, Mr. Melson was allowed to return to his CAARNG unit, where he continued to serve for an additional five months.

The Government asserts that Mr. Melson knew that his injuries were permanent but does not point to anything in the record that would support a finding of such knowledge. For example, the Government argues that *"*the record demonstrates that Mr. Melson knew of his disability and knew that it was permanent . . . ." Def's MTD at 7. But the cited portions of the record do not show anything more than Mr. Melson knew that he was injured at the time of his discharge and disqualified from appointment as a commissioned officer of the Army, not that he had permanent injuries or was even unfit for retention at that time. *See id*. at 7-8 (citing the history of Mr. Melson's medical treatment during his service). And Mr. Melson's medical treatment appears to have been limited to the period between 2002 and 2003, S. Appx at 19-24, more than a year before his eventual discharge in 2005. If he were clearly suffering from a permanent injury, one would expect more medical attention leading up to his discharge. The record also indicates that Mr. Melson's injuries subsequently worsened and required "extensive surgery." S. Appx at 14. Mr. Melson's history and knowledge of his injuries resembles that in *Harper* and is insufficient to trigger the statute of limitations at his discharge.

Mr. Melson raises several arguments about his post-ROTC/SMP career that he asserts show he did not understand that his injuries were permanent. Pltf.'s Resp. at 6-9; Pltf.'s Suppl. Br. at 2-3. These are largely irrelevant, however, because the question is what he knew at the time of his discharge. Given the unusual facts surrounding his discharge, however, there is one issue that bears consideration regarding Mr. Melson's amended discharge papers that correct his discharge date to October 2005. Although it is unclear from the briefing whether Mr. Melson's knowledge at this corrected discharge is what could have triggered the statute of limitations, it

would not make a difference to the outcome if it were.  First, as noted above, after being notified that he was disenrolled from the ROTC/SMP because of the chronic pain in his wrists and hands, Mr. Melson returned to his CAARNG unit and continued to perform his duties and drill for five months before he was finally discharged in October 2005.  S. Appx at 6, 79.  There is no indication in the record that Mr. Melson suffered any debilitating pain or was unable to perform any of his duties during this period, which strongly supports his argument that he was unaware at the time of his discharge in October 2005 that he was suffering from permanent and stable injuries.

Second, following his notice of disqualification, Mr. Melson sought a waiver from the Army.  Pltf.'s Suppl. Br. at 6.  On September 28, 2005, the Army granted a waiver and concluded that Mr. Melson "has been determined medically qualified by the Cadet Command Surgeon for retention in the ROTC program."  Pltf.'s Suppl. Br., Ex. D (ECF No. 40 at 63).  While this language may be boilerplate, it does support the conclusion that Mr. Melson was not aware he was suffering from permanent injuries at the time of his discharge roughly a week later in October 2005.

### V.     Conclusion

For the foregoing reasons, the Government's Motion to Dismiss (ECF No. 24) is **DENIED**.

The Parties shall confer and file a Joint Status Report **on or before April 29, 2021** proposing a schedule for further proceedings.

**IT IS SO ORDERED.**

s/ Edward H. Meyers
Edward H. Meyers
Judge
