# In the United States Court of Federal Claims

No. 17-540 C
Filed: October 18, 2022

|   |   |
|---|---|
| RUDY SAMUEL MELSON, | ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) ) |

*Mark Anthony Crawford*, The Crawford Law Firm, PC, Floral Park, New York, for Plaintiff.

*Igor Helman*, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., with whom was *L. Misha Preheim*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, for Defendant. *John Haberland*, United States Army Legal Services Agency, of counsel.

## OPINION AND ORDER

**MEYERS, Judge**.

Rudy Melson claims he suffered hand and wrist injuries while on active duty that rendered him disabled and, therefore, entitled to disability pay since the Army discharged him in 2005. Melson enrolled in a joint ROTC/National Guard program and was attending the University of Southern California when the Army determined that Melson's hand and wrist issues disqualified him from appointment as a commissioned officer. As a result, the ROTC disenrolled Melson, which resulted in his mandatory discharge from the Army Reserve. This should also have resulted in Melson's discharge from the National Guard, but for reasons that remain unknown he continued to drill with his National Guard unit without incident for another five months until he was discharged from it as well.

Ultimately, the outcome of this case comes down to the difference between fitness for appointment as a commissioned officer and fitness for retention in the military. As the Court of Claims recognized, the requirements for appointment are more demanding than those for retention. Therefore, a disqualification from appointment does not necessarily mean someone is disabled under Department of Defense criteria, which require an inability to perform one's military duties. Although it is undisputed that the Army disqualified Melson from appointment as a commissioned officer due to his hand and wrist injuries, the fact that he was continuing to

perform his duties at the time of his discharge undermines his contention that he was disabled at the time of his separation.

Because the Army considered the relevant information and its conclusion that Melson was not disabled is well-supported by the record, the Court grants the United States' cross-motion for judgment on the administrative record and denies Melson's motion for judgment on the administrative record.

### I.     Background

The facts of this case have been thoroughly set forth in the prior decisions of this Court and the Federal Circuit. *See Melson v. United States*, 135 Fed. Cl. 207 (2017) ("*Melson I*"), *aff'd in part and vacated in part*, 780 F. App'x 885 (Fed. Cir. 2019) ("*Melson II*"), *remanded to* 152 Fed. Cl. 767 (2021) ("*Melson III*"). Only the facts relevant to the pending motions are provided below.

Melson began his service with the United States Army Reserve as a Private First Class on September 30, 2002. ECF No. 1 ¶ 5. Prior to joining the military, Melson had experienced intermittent hand pain for at least one year, *see* ECF No. 45-2 at AR 134, and "had received some medical treatment related to his wrists and fingers." ECF No. 53 at 3. Specifically, before beginning basic training, and once during his service, he received "finger tendon injections by an orthopedist . . . ." ECF No. 45-1 at AR 57. In 2002, he was tested for antinuclear antibodies ("ANA") with equivocal results. *Id.* He also contracted Lyme disease in 2001. *Id.* In May and June 2003, Melson again sought medical treatment for pain and swelling in his hands and wrists. ECF No. 45-2 at AR 130 (medical notes from May 2003 visit regarding hand pain); *id.* at AR 134 (medical notes from June 2003 recording "joints pain in hands"). And on September 22, 2003, Melson was referred to Dr. Jack Berger, who provided a rheumatology consultation regarding recurrent pain and swelling Melson developed after participating in training exercises. ECF No. 45-1 at AR 57.

As part of an application to participate in the Army's Reserve Officer Training Corps/Simultaneous Membership Program ("ROTC/SMP"), Melson underwent a medical screening to determine his fitness for appointment as a commissioned officer in the Army. On January 23, 2004, the Department of Defense Medical Examination Review Board ("DODMERB") informed Melson that he was "medically disqualified" from appointment as a commissioned officer because of rheumatoid arthritis and renal calculi (kidney stones) within the prior 12 months. ECF No. 45-1 at AR 45. The details of what happened next are unclear from the record, but on August 19, 2004, Melson requested a release from the Army Reserve to enlist in the California Army National Guard ("CAARNG") in order to participate in the ROTC/SMP. ECF No. 45-1 at AR 8. Under the ROTC/SMP, Melson would serve concurrently in the CAARNG and ROTC. ECF No. 45-1 at AR 3.

In February 2005, Melson sought treatment for a "[h]and injury while participating in unit activities (Trojan Games)" and was issued a Line of Duty recommending he refrain from "grasping, pushing, pulling, [or] lifting" for three weeks. ECF No. 45-1 at AR 47. In May 2005, the Army disenrolled Melson from the ROTC/SMP "due to chronic pain in hands and wrists, a medical condition which precludes appointment as a commissioned officer." ECF No. 45-5 at

2

AR 641.  Because of Melson's disenrollment from the ROTC/SMP, Army Regulations required the Army Reserve to discharge him.  ECF No. 45-1at AR 29.  Accordingly, the Reserve discharged Melson effective May 13, 2005, with an "uncharacterized" service designation pursuant to Army Regulation 135-178, ¶ 5-6d.  *Id.*; ECF No. 45-1 at AR 29.

Melson's disenrollment and discharge from ROTC also meant that the CAARNG had to discharge him.  ECF No. 45-2 at AR 369; *see also* ECF No. 45-1 at AR 30.  But for reasons that remain unknown, the CAARNG did not discharge Melson, and he continued to drill with his Guard unit for another five months.  Because of this continuing service, the CAARNG corrected the effective date of Melson's discharge from the Guard to October 3, 2005.  ECF No. 45-1 at AR 32 (correcting "8b." to read "2005 – 10 – 03").

In 2009, Melson began seeking a review of his discharge from various Army boards and the CAARNG.  In 2012, he received a 100% service-connected disability rating from the Department of Veterans Affairs ("VA").  ECF No. 45-4 at AR 524.  And in 2013, he brought a disability claim before the Army Board for Correction of Military Records ("ABCMR"), in which he sought to have his discharge changed to one for physical disability with disability pay. ECF No. 45-3 at AR 394.  On November 20, 2014, the ABCMR denied his claims because it found "no evidence the applicant had a disability causing him to be unfit to perform his military duties as an enlisted member of the CAARNG that was incurred or aggravated while he was entitled to basic pay or as the proximate result of performing active duty or inactive duty training."  ECF No. 45-2 at AR 268-69.  Following a request for reconsideration, on January 14, 2016, the ABCMR concluded the record showed that Melson "was disenrolled due to chronic pain in his hands and wrists, a medical condition that precluded appointment (not retention) as a commissioned officer."  ECF No. 45-1 at AR 16.  The ABCMR thus concluded again that Melson did not have any condition that prevented him from performing his duties as an enlisted member of the CAARNG.  *Id.*

Melson filed his Complaint in this Court on April 17, 2017.  ECF No. 1.  Judge Wheeler dismissed both counts of the Complaint for lack of subject matter jurisdiction.  *Melson I*, 135 Fed. Cl. at 212.  The Federal Circuit affirmed the dismissal but concluded that the Complaint, although not clear, adequately pleaded a disability claim.  Therefore, the Circuit vacated-in-part and remanded the case back to this Court to "determine when the limitations period began to run for any disability claim based on Melson's discharge from the Army Reserve and whether such a claim is time-barred."  *Melson II*, 780 F. App'x at 888.  The Government filed a Motion to Dismiss for lack of subject matter jurisdiction on timeliness grounds, which this Court denied on March 25, 2021.  ECF No. 42.  This Court concluded that, in the light most favorable to Melson, he lacked sufficient knowledge of his injuries to trigger the statute of limitations upon discharge because of his five months of continued drilling with his CAARNG unit without limitation and subsequent ROTC waiver[1] that found him "medically qualified by the Cadet Command Surgeon

---

[1] Because this ROTC waiver is not in the administrative record and was not before the ABCMR, the Court does not consider it here.  Because neither party supported remanding the matter to the ABCMR to let it consider this document, the Court has chosen not to remand the matter to the ABCMR for its consideration of the ROTC waiver.

for retention in the ROTC program." *Melson III*, 152 Fed. Cl. at 772 (citation omitted). This motion followed.

## II.     Legal Standard

In deciding a motion for judgment on the administrative record, the court makes "factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). Unlike a motion for summary judgment, the Court may grant a motion for judgment on the administrative record even if there is a genuine dispute of material fact. *Id.* at 1355-56. In lieu of an evidentiary trial, the Court references the administrative record to resolve any question of fact. *Id.* at 1356.

"Military [retirement] cases involving decisions of a military correction board and a service member's subsequent entitlement to appropriate monetary compensation under the U.S. Code are reviewed on the administrative record under the same standard as any other agency action." *Sharpe v. United States*, 134 Fed. Cl. 805, 813-14 (2017) (citations omitted). And "[t]hat standard is the 'standard set forth in the Administrative Procedure Act (APA).'" *Sharpe v. United States*, 935 F.3d 1352, 1358 (Fed. Cir. 2019) (citations omitted). The APA requires a court to set aside agency action when such action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). Accordingly, "Board decisions . . . can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (citations omitted). When conducting such a review, the Court "may not substitute [its] judgment for that of the [agency]." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019). Even if this Court "disagree[s] with the decision to discharge, [the Court] will not substitute [its] own judgment if reasonable minds could have come to the decision below." *Sobczak v. United States*, 93 Fed. Cl. 625, 632 (2010).

The burden is on the plaintiff to show "by 'cogent and clearly convincing evidence' that the decision of the military correction board fails this [substantial evidence] standard." *Watson v. United States*, 113 Fed. Cl. 615, 627 (2013), *decision clarified*, 118 Fed. Cl. 266 (2014), *modified*, No. 12-785C, 2015 WL 4914966 (Fed. Cl. Aug. 17, 2015) (quoting *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986)). The plaintiff can do this by showing "that the personnel involved ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them, or that in any other manner they failed to discharge their designated duties." *Stephens v. United States*, 358 F.2d 951, 955 (Ct. Cl. 1966).

## III.    Discussion

### A.     The ABCMR's conclusion that the record lacks evidence of Melson's inability to perform his duties is rational.

The ABCMR found "no evidence the applicant had a disability that failed retention standards and *caused him to be unfit to perform his military duties* as an enlisted member of the CAARNG that was incurred or aggravated while he was entitled to basic pay . . . ." ECF No. 45-1 at AR 16 (emphasis added). It is important to focus on what the ABCMR found—that Melson was disenrolled due to his "medical condition that precluded *appointment* (not retention) as a

commissioned officer." ECF No. 45-1 at AR 15-16 (emphasis in original). Because the ABCMR found no evidence that Melson could not perform his duties, it determined that Melson "does not meet the regulatory criteria and there is no basis on which to change his discharge to a discharge for physical disability with severance pay." ECF No. 45-1 at AR 16. The ABCMR also found that the CAARNG's delay in discharging Melson did not cause him any harm because although "[t]he reason for the delay in processing his discharge after disenrollment is not known, . . . it appears that, once his record was corrected, the delay did him no harm." *Id.* at AR 15. The question for the Court is whether the ABCMR's conclusion is arbitrary, capricious, or otherwise unlawful. Given that Melson continued to drill with his CAARNG unit for an additional five months after disenrollment from the ROTC and discharge from the Reserve, the ABCMR's decision is strongly supported, if not compelled by, the record.

Melson asserts that the ABCMR improperly denied his request to correct his military records to reflect a medical disability. He argues that he developed physical disabilities, including pain, tremors, and swelling in his hands and wrists, that began during basic training in 2002 and culminated in a "hand injury while participating in unit activities (Trojan Games)" for which he was issued a line of duty[2] in February 2005. ECF No. 48 at 5-6. He argues that these injuries "adversely impacted his ability to perform his duties . . . in that, from 2003 through 2005 his injuries were aggravated and spread to his wrist while performing recruiter duties, training activities, field training exercises, medical training involving use of his hands, land navigation, physical exercises and administrative duties." ECF No. 48 at 6. Accordingly, he argues he should have been granted medical disability status.

What Melson overlooks but the ABCMR properly recognizes is the difference between being unfit to perform one's duties as a servicemember and being disqualified from appointment as a commissioned officer. ECF No. 45-1 at AR 15-16. A disability retirement requires "a determination . . . that a member . . . is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay." 10 U.S.C. § 1201(a). Pre-existing conditions "aggravated by active military service" can support a disability determination in certain circumstances. *Id.* § 1201(b)(3)(B)(i).

The standard to qualify for appointment as a commissioned officer, however, is more stringent than the standard used to determine fitness for continued duty. In *Stephens v. United States*, 358 F.2d 951 (Ct. Cl. 1966), the Court of Claims held that disqualification from entry into service is immaterial to whether someone was disabled at the time of disqualification. Stephens was an Army Reserve officer for 17 years from 1937 until 1954, when he was "relieved from active duty by reason of denial of category renewal . . . not by reason of physical disability." *Id.* at 952. Following his active duty, Stephens continued to serve in the Army Reserve. *Id.* During his time in the Reserve, Stephens tried twice to join the Regular Army but the Army found him disqualified for appointment both times. *Id.* at 952-53. The first time, the Army found Stephens unfit to enter service "with a physical profile of P411121, temporary." *Id.* at 952. The second time, the Army found Stephens "unfit for entry on regular military duty, with a profile of P411111, permanent, due to chronic pancreatitis." *Id.* at 953. Each of these physical

---

[2] A line of duty is a medical determination that Melson suffered an injury while on active duty.

examinations found Stephens to have a "nonacceptable defect" in his "general physical condition."[3]

Three days after his second attempt to join the Regular Army, Stephens applied to the ABCMR to change his discharge in 1954 to a disability retirement, relying in part on the Army's two findings that he was unfit to enter the Army. *Id.* at 954. As the Court of Claims held, and this Court must follow, "the fact that plaintiff was denied enlistment in the Regular Army subsequent to his release from active duty as an officer *is of itself immaterial, for the standards imposed for original appointment are more stringent than those for retention on active duty*." *Stephens*, 358 F.2d at 954-55 (emphasis added) (citations omitted). Therefore, as the ABCMR concluded, the question is not whether Melson was fit for appointment (he was not) but fit for retention. Because the standards are different, the finding that Melson was not fit for appointment as a commissioned officer does not establish that he was unfit to perform his duties.

Although Melson repeatedly asserts that his "physical disability rendered him unfit to perform the duties of [his] office, grade, rank, or rating," he points to no evidence in the record to that effect. In fact, the last mention of *any* injury in the record concerns a hand injury in February 2005 that resulted in three weeks of limited duty. ECF No. 45-1 at AR 47. There is no indication that this injury impacted the performance of his duties after the three-week limitation of his duties. *Id.* As this Court previously concluded, "[a]t most, at Mr. Melson's May 2005 discharge, he knew that he had suffered from chronic hand and wrist pain, but there were no indicators that his problem was permanent or even causing him pain or preventing him from performing his duties at the time of his discharge." *Melson III*, 152 Fed. Cl. at 771-72.

The ABCMR's decision also finds strong support in the period after Melson's disenrollment and before his discharge from the CAARNG. Although it is not clear why, "Mr. Melson returned to his CAARNG unit and continued to perform his duties and drill for five months before he was finally discharged in October 2005." *Melson III*, 152 Fed. Cl. at 772 (citing S. Appx. at 6, 79).[4] In fact, in his application to the ABCMR, Melson himself wrote that "I was in fact discharged from the ROTC/SMP on 13 May 2005, yet *continued to drill* for approximately 5 months after disenrollment." ECF No. 45-1 at AR 17 (emphasis added). This ability to continue performing his duties strongly supports the ABCMR's decision. *E.g.*, *Williams v. United States*, No. 02-585C, 2006 WL 5629680, at *7 (Fed. Cl. June 2, 2006) ("Whether or not a member has a listed disability, the essential inquiry is always whether the symptoms prevented the member from satisfactorily performing his duties.").

Although the record includes several medical records reflecting hand pain dating back to 2003, there is nothing showing any treatment or inability to perform his duties during the five

---

[3] "The six numerals [in the profile] represent: general physical condition; upper extremities; lower extremities; hearing; eyes, and neuropsychiatry. The ratings under each are from 1 to 4, 1 indicating no defect, 4 indicating nonacceptable defect, and 2 and 3 being between these extremes." *Stephens*, 358 F.2d at 369 n.1.

[4] *Melson III* cited to the supplemental appendix because the administrative record had not been filed at that time. *Melson III*'s citation to "S. Appx. 9" corresponds to ECF No. 45-1 at AR 32, and the citation to "S. Appx. 76" corresponds to ECF No. 45-1 at AR 15.

months that Melson "continued to drill" with his CAARNG unit. ECF No. 45-1 at AR 47-59. If there were medical issues amounting to a disability, the Court would expect to see them reflected in the record. And the absence of any such documentation indicates that Melson was actively drilling with his CAARNG unit without issue. Thus, this Court cannot say that the ABCMR's determination that Melson did not have an injury that prevented him from performing his military duties was arbitrary, capricious, or unsupported by substantial evidence in the record.

Melson next argues that he should have received a military disability evaluation, and that evaluation would have shown that he was eligible for disability benefits and severance pay under 10 U.S.C. §§ 1201 and 1203. ECF No. 48 at 13-17. According to Melson, he should have been referred to a medical evaluation board ("MEB") because he was disenrolled from ROTC for his "medical condition, pain in his hands and wrist . . . ." ECF No. 48 at 11. But Section 1201 requires "a determination . . . that a member . . . is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . ." 10 U.S.C. § 1201(a). "Disability Evaluation System processing is triggered when the commander of the medical treatment facility where a soldier is receiving treatment—*after determining that the soldier appears to be medically unqualified to perform his duties*—refers the soldier to an MEB." *Joslyn v. United States*, 110 Fed. Cl. 372, 379 (2013) (citing Army Regulation 635-40 ¶ 4-9) (emphasis added). The applicable regulations for disability severance pay also require that the soldier must be "unfit due to a compensable physical disability." Army Regulation 635-40, ¶ 4-27(c)(3). Because there is nothing in the record indicating Melson was unable to perform his duties when he was disenrolled from the ROTC or when he was discharged from the CAARNG, there was no basis to refer him to the disability evaluation process.

The ABCMR found "no evidence the applicant had a disability that failed retention standards and caused him to be unfit to perform his military duties as an enlisted member . . . ." ECF No. 45-1 at AR 16. Again, Melson himself stated to the ABCMR that he "continued to drill for approximately 5 months [with the CAARNG] after disenrollment" from the ROTC. ECF No. 45-1 at AR 17. Like in *Stephens*, "the nature, number, duration, and severity of plaintiff's disabilities while in service . . . were not of such obvious character as to require an evaluation . . . by a physical evaluation board to determine his physical fitness to perform his duties." 358 F.2d at 954. At the time of his disenrollment from the ROTC, Melson was still able to drill with the CAARNG. There is nothing in the record indicating that when the CAARNG discharged him 5 months later he was unable to perform his duties (his discharge was required by his disenrollment from the ROTC). None of this supports a referral to a disability evaluation.

Melson's ability to perform his duties distinguishes this case from *Lawler v. United States*, 169 Ct. Cl. 644 (1965), where the Court found that "[t]he record of frequent and extensive periods of hospitalization of [the plaintiff]; his recurrent periods of high blood pressure; *incapacity and inability to perform his duties*, and his medical record of disabling arthritic and heart conditions" was enough evidence to require an evaluation, along with the fact that the officer died shortly thereafter "from a heart attack caused by the same symptoms . . . ." *Id.* at 165 (emphasis added). There is no similar history in this case nor any indication that Melson could not perform his duties.

Melson also contends that he "satisfied the statutory requirements" of § 1201 because (1) "his disability was of a permanent nature and stable," (2) he "received a 100 percent rating from

the VA," (3) his disability "rendered him unfit to perform the duties of [his] office, grade, rank, or rating," and (4) his disability "was proximately caused by his participation in Basic Combat Training." ECF No. 48 at 15. Similarly, Melson argues that he satisfies the requirements of § 1203 because he "had less than 20 years of service, his disability was not the result of any intentional misconduct[,] . . . was not incurred during a period of unauthorized absence[,] . . . was incurred in the line of duty[, and] while unknown to him at the time, was or may have been of the permanent nature . . . ." ECF No. 48 at 17. But for the reasons explained above, Melson's contention that his injuries rendered him unfit to perform his duties is not supported by the record, much less by clear and convincing evidence to support a conclusion that the ABCMR's decision is arbitrary and capricious.

The Court finds similarly unpersuasive Melson's argument that "[i]f the Army had properly evaluated [him], he would have likely qualified for disability retirement benefits and disability severance pay" based on his 100% disability rating from the VA. ECF No. 48 at 17-18. Melson argues that, although not binding on the ABCMR, the VA rating "should certainly be considered and deemed persuasive," but provides no authority for this assertion. ECF No. 56 at 5. But the Army and VA disability determinations rely on different criteria and often vary significantly. *E.g.*, *Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005)) ("Due to the nature of the rating and the different goals of the two systems, the VA disability rating is not binding on the service."); *see also Jardon v. United States*, No. 10-738C, 2013 WL 677028, at *18 (Fed. Cl. Feb. 14, 2013) ("While both the Army and the VA use the VA's Schedule for Rating Disabilities . . . to assess a soldier's disability, the ratings are based on different criteria and, thus, often differ widely."). Given the different criteria, there is nothing arbitrary and capricious about the ABCMR declining to find Melson disabled for Department of Defense purposes despite his VA disability rating.

The parties also expend a fair amount of effort debating the ABCMR's conclusion that Melson's condition was preexisting or incurred while on active duty. Because the ABCMR's determination that Melson was not unfit to perform his duties, as evidenced by his continuing CAARNG duty, resolving whether his condition was preexisting is unnecessary to the outcome of the case.

Because the ABCMR's conclusion that there is no evidence that Melson was unable to perform his duties in the record is rational and well-supported, the ABCMR's decision was not arbitrary and capricious, and this Court will not disturb it.

### B. The Army properly characterized Melson's service.

Melson also argues that he was entitled to disability separation because he "was both disenrolled and discharged from service due to his medical condition." ECF No. 56 at 2 (emphasis omitted). He asserts that because the Army disenrolled and discharged him simultaneously "without further obligation" and with an "uncharacterized" discharge, the record clearly reflects that he was discharged "based on a medical condition." ECF No. 56 at 2 (citing ECF No. 45-1 at AR 28).

Melson overlooks a critical portion of the discharge order. As explained above, Melson was discharged because of unfitness for appointment as a commissioned officer, not due to a

8

disability.  And the mere presence of a "medical condition" does not mean Melson was disabled.  In fact, Melson's discharge was "in accordance with [Army Regulation] 135-178, paragraph 5-6d," which *mandates* the discharge of cadets who are disenrolled from ROTC.  ECF No. 45-1 at AR 28.  Therefore, Melson's discharge was based on his disenrollment from ROTC.  And his NGB Form 22 lists the authority and reason for his discharge from the CAARNG as "Para 8-26b(1) NGR 600-200; ENROLLMENT/DISENROLLMENT IN ROTC."  ECF No. 45-1 at AR 31.

Melson also takes issue with the ABCMR's denial of his "request to correct his military record from 'uncharacterized' to 'separation for physical disability.'"  ECF No. 48 at 12-13.  Because the governing regulations support the ABCMR's conclusion that "uncharacterized" was the appropriate discharge designation, the ABCMR did not err in denying relief.  Army Regulation 135-178, ¶ 5-6(c) states that service of cadets discharged under ¶ 5-6 for disenrollment from the ROTC, like Melson, will be described as "uncharacterized."  Because Melson was discharged "in accordance with AR 135-178, paragraph 5-6d," the proper discharge designation was "uncharacterized."  Additionally, "Army Regulation 135-178 provides that '[s]ervice will be described as uncharacterized if separation processing is initiated while a Soldier is in an entry level status.'"  ECF No. 53 at 18 (quoting Army Regulation 135-178, ¶ 2-11).  Here, the ABCMR found Melson was in an entry level status, confirming that his discharge should be "uncharacterized."  ECF No. 45-1 at AR 14-15.  This conclusion comports with the regulations and is not arbitrary and capricious.

### IV.  Conclusion

For the foregoing reasons, the Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 48, is **DENIED** and the Government's Cross-Motion for Judgment on the Administrative Record, ECF No. 53, is **GRANTED**.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward H. Meyers  
Edward H. Meyers  
Judge